On November 7, 1944, the plaintiff Ivy Prescott was riding on the truck of Elvis Blades as an invited guest. Blades was accompanied by another invited guest, a Mr. Schlandecker. Blades was the driver, and in the cab next to him was seated Schlandecker, and the plaintiff Ivy Prescott was sitting back of the cab, on the flat bottom of the truck, on the right hand side, with his feet resting on the running board. They were travelling south on Baton Rouge Avenue, in the Third Ward of the Parish of East Baton Rouge, which Baton Rouge Avenue runs north and south and is composed of approximately 18 feet of asphalt by 3 feet of dirt and gravel shoulders on each side. At approximately the same time the defendant, S.M. Rowland, accompanied by his brother, L.A. Rowland, was travelling westward on Evangeline street, which street is also composed of about 17 feet of asphalt with dirt and gravel shoulders of 3 feet each and which street runs east and west, and intersects the said Baton Rouge Avenue in the suburbs of the City of Baton Rouge, in the Third Ward of East Baton Rouge Parish. At about 4:45 p.m., on the date aforesaid, on a fair and dry *Page 73 
day, the said truck and the said automobile collided at the middle of the intersection of Baton Rouge Avenue and Evangeline Street, and as a result of the collision, the said Ivy Prescott was thrown from the truck into a ditch on the west side of Baton Rouge Avenue, some 10 feet south of the asphalt on Evangeline Street. He was knocked unconscious and was carried to The Lady of the Lake Hospital in Baton Rouge, in an ambulance, where he was treated by Dr. Philip Polito and Dr. T. Jeff McHugh. His injuries consisted of a badly fractured left shoulder, which necessitated an operation, and following the operation he developed pneumonia, for which he was treated for several days and as a result of which, among other things, he had to be placed in an oxygen tent and had to receive treatments of penicillin. Also, as a result of his operation, it is shown that he lost considerable blood and had to receive blood transfusions. He stayed some three weeks in the hospital before being discharged to his home, or his brother's home, where he spent another month before he was able to return to work, and according to his statement, after reporting to work he was unable to perform any real services due to his condition, and some four weeks later he was discharged by his Company for the reason that the job in which he was engaged was completed. His employer at the time of the accident was Blaw Knox Construction Company, and his employment was as a pipe fitter, at an hourly wage of 60¢ per hour.
The plaintiff filed this suit to recover damages for the injuries sustained by him, and the pain and suffering caused by the injuries, as well as for loss of time from his work, loss of earning power, and medical and hospital expenses resulting from the accident and injuries. His suit is based on the contention that the accident was caused solely by the gross negligence of S.M. Rowland in entering the intersection at an excessive rate of speed after the intersection had been preempted by the Blades truck, which was coming south on a favored street; that the said Rowland car ran into and struck the truck in the center of the intersection, and, in effect, that the defendant Rowland collided with the truck on its left side because he was driving at an excessive rate of speed and was not keeping a proper lookout for traffic on Baton Rouge Avenue.
The defendant, on the other hand, contends that the collision resulted entirely as a result of the gross negligence on the part of Elvis Blades in driving his truck carelessly and at an excessive rate of speed after the intersection had been preempted by the defendant Rowland and that the defendant Rowland had come to almost a complete stop at the middle of the intersection at the time of the impact; that the said Blades side-swiped Rowland's car as a result of his negligence in driving, and caused this collision, and as a result the plaintiff, Prescott, was thrown from the truck and sustained the injuries complained of. Defendant further contends, in the alternative, that if it be found that he was guilty of any negligence which contributed to the accident, which he denies, then and in that event, the plaintiff was guilty of contributory negligence barring his recovery, in that plaintiff begged and received a ride on the truck by a person whom he did not know, and that thereupon placed himself on a flat bottom which composed the rear of the truck, in a dangerous position, whereon he had no means, of holding on or propping himself to guard against a sudden jar or jolt; that moreover the said plaintiff failed to keep any lookout and failed to request the driver of the truck to drive in a careful and prudent manner so as to prevent an accident such as this one.
After due hearing of the case, the district court came to the conclusion that the plaintiff had failed to prove that defendant Rowland was guilty of any negligence which contributed to the accident and he thereupon dismissed plaintiff's suit. Plaintiff has appealed.
A review of the evidence shows that plaintiff's case, in so far as liability is concerned, is based on the testimony of plaintiff himself, Mr. Schlandecker, who was riding in the cab with the driver, Blades, and a State policeman, Capt. R.M. Walker, who investigated the collision some six minutes after its occurrence. The driver *Page 74 
of the truck, Blades, was not called as a witness for the reason that plaintiff could not obtain compulsory service on the witness.
The plaintiff Ivy Prescott testified that he requested and obtained a ride on Blades' truck at the gate of Blaw Knox Company offices, and that they thereupon proceeded first on the Scenic Highway and later on Baton Rouge Avenue (for the purpose of avoiding traffic), at a rate of speed of approximately 25 miles per hour. He states that he was seated back of the cab on the right hand side and that he was facing south with his feet on the running board, and that as they approached the intersection of Evangeline Street they slowed down somewhat and that as they reached the middle thereof, or possibly a little towards the south side, they were hit by the Rowland car and that he was thereupon jarred or jolted off the truck and rolled into the ditch on the west side of Baton Rouge Avenue, several feet south of Evangeline Street; that he was knocked out and did not come to until some half hour later. He states that he did not see the oncoming car for the reason that he was not looking in that direction, but he maintains that Blades was driving carefully, and that Blades had intercepted the intersection when the crash occurred. Thereafter, due to his unconscious condition, he knows nothing about the accident.
The witness Schlandecker corroborates the testimony of plaintiff Prescott, and further testifies that Rowland, defendant, was driving westerly at an excessive rate of speed, on Evangeline Street, and that at the last minute he applied his brakes, but could not prevent running into the left side of the truck; that the impact was on the rear of the left front fender of the truck, and on the left running board thereof. He states further that the truck continued to go in a southerly direction and then turned east and came to rest against a chinaberry tree on a lot on the east side of Baton Rouge Avenue, some 15 feet south of Evangeline Street, and that the Rowland car came to rest at about the middle of the intersection, slightly to the south of the center line of Evangeline Street.
Captain R.M. Walker stated that he is a State policeman and that he investigated the accident shortly after its occurrence and, ascertained that it happened at 4:45 p.m., that the Dodge driven by Mr. Rowland beaded west on Evangeline Street, and the truck driven by Mr. Blades was going south on Baton Rouge Avenue; that the left side of the truck, right about at the door, had been hit by the Dodge and that all the front end of the Dodge was smashed. He states further that there were no stop signs at the intersection. He further testifies that the truck was up against a tree in the front yard about 60 or SO feet from where the impact had happened, and the Dodge car was in the center of the intersection; that the skid marks and tire marks of both vehicles show that they were both in the middle of the streets that they were travelling, and the skid marks made by the Dodge were approximately 15 feet. He further testifies that from the physical evidence he witnessed it is clear that the point of contact between the two vehicles was the front end of the Dodge which was demolished, and the left side of the truck, which was hit; that the Dodge stopped right at the point of impact in the center of the intersection; that there was nothing to obstruct the view on Evangeline Street, north from Baton Rouge Avenue, except a house which sat some 35 feet on the east side of Baton Rouge Avenue. The sum and substance of his testimony is to the effect that the Dodge automobile, from the physical evidence, smashed its front end into the left side of the truck.
The defendant and his brother, L.A. Rowland, testified that as they approached Baton Rouge Avenue going west, they looked to the north or right hand side for oncoming traffic going south on Baton Rouge Avenue. L.A. Rowland states that he could see a distance of approximately 100 feet and that nothing was in sight. The defendant states that in his position as they came within one and one-half car lengths from the intersection he could see a distance of 50 to 60 feet and that nothing was in sight. They both testify that they were following a Mr. Clarence Rogers, a real estate man, who was going to show, a piece of property to defendant Rowland, said property being located on the Scenic Highway west of Baton Rouge Avenue; that as said Rogers approached the intersection *Page 75 
he slowed down and that consequently they were forced to slow down and stop at about one and one-half car lengths from the intersection; that the defendant Rowland shifted his car to first gear and started to enter the intersection, and then shifted to second gear, and as he had entered the intersection about two feet and was travelling at about 2 to 5 miles per hour, he and his brother perceived the truck coming south on Baton Rouge Avenue at a rapid rate of speed, and the defendant Rowland thereupon immediately applied his brakes in order to avoid being run into, but that his car skidded some 12 or 15 feet into the middle of the intersection and that Blades never slowed down, but continued to travel rapidly and side-swiped him and thereby tore his right and left fenders and his grill, and knocked off his bumper, which was not in any way bent. The defendant estimates the distance at which he perceived Blades' truck at about 100 feet, more or less, and his brother, L.A. Rowland, estimates it at about 150 feet. These two witnesses agree substantially with the witnesses for plaintiff as to the respective positions of the vehicles after the collision.
The defendant introduced the testimony of Clarence E. Rogers, who states that he was on his way to show property to the defendant; that as he approached the intersection he did not come to a full stop, but slowed down, and perceiving no traffic one way or the other, continued across; that the defendant was following him at a distance of not more than 50 feet, and that when he beard the crash, he parked his car on the north side of Evangeline Street and came over to the scene of the accident. It might be noted here that the State policeman, Mr. Walker, testified that the only witnesses he saw at the scene, aside from the drivers, were Mr. L. Rowland and Mr. Schlandecker.
Defendants also introduced the testimony of Mr. Alvin Doyle, Jr., the mechanic who fixed Rowland's automobile. He stated that he had to put 2 new fenders on the Rowland car and had to change the grill and also that the front bumper had been knocked off, but was in no manner bent. He gives as his opinion that the damage to the Rowland car was caused by a sideswipe, as testified to by the Rowland brothers.
[1] On the question of liability, it is apparent that the trial judge accepted the version of defendant as true; but in his written opinion, he fails to explain, at least one point, which to us appears important, and that is how did the Rowland car leave visible tire marks of about 15 feet if he was really travelling at a rate of only 2 to 5 miles per hour? It is probable the truck was traversing the intersection at a faster rate than 25 miles per hour, but it seems to us that, in view of these skid marks, the defendant was entering the intersection at a rather fast rate of speed and upon perceiving the truck, suddenly applied his brakes. The evidence clearly shows that the only obstruction at that corner was a house which sat back at a distance estimated by the witnesses at from 35 to 50 feet from the east edge of Baton Rouge Avenue, so that traffic approaching from either side could be perceived at a considerable distance. The evidence also shows that prior to the day of the accident there had been stop signs on Evangeline Street showing that Baton Rouge Avenue was a favored street; but that the stop signs had been destroyed prior to the accident, and all that remained of them were the posts, and there is no clear showing that the defendant knew about these signs, since he denied having travelled on that street for some considerable time before then. In any event, as brought out by the trial judge, Blades did have the right of way, since he was travelling to the right of the defendant Rowland, and certainly, unless we can find that the defendant had already preempted the intersection, it is clear that he was guilty of negligence which contributed to the accident, and we have serious doubts, as stated above, that his story is true as to having skidded the 15 feet while traveling at 2 to 5 miles per hour.
[2, 3] From our review of the evidence, as set forth hereinabove, we are satisfied that the defendant Rowland was guilty of negligence which contributed to the accident in the following particulars, viz.: in not keeping a proper lookout before entering the intersection, in not having his car under proper control, and in entering the intersection at a rate of speed not in conformity with safe driving. We also feel that the defendant Blades may have been *Page 76 
traversing the intersection at too rapid a rate of speed and was therefore also guilty of negligence which contributed to the accident, but we cannot find any evidence showing that such negligence by Blades can be imputed to the plaintiff herein, who was riding as an invited guest on the rear of the truck and who was not in any position to exercise control of the Blades truck.
It is our conclusion that the truck and the car reached the intersection at about the same time and that they both were travelling at a greater rate of speed than testified by the parties. This conclusion is borne out particularly by Police Officer Walker's report of the possible speed of the vehicles by the damage done to both cars, by the fact that the Dodge car skidded some 15 feet before smashing into the truck and the further fact that the truck continued some 50 or 60 feet after the collision before coming to rest on a tree.
[4] On the quantum of damages, it is clearly shown that the medical expenses sustained by the plaintiff were $250 to Drs. Polito and McHugh; $94.50 to the nurse, Miss N. Sharp; $60 to Dr. Williams for X-rays; $10.50 to the nurse E.M. Lasseigne; $21 to the nurse Lela Holmes, making a total of $436. It is further clearly shown that prior to the accident plaintiff was a pipefitter helper and was earning 60¢ per hour, and that since the accident has remained in a condition which prevents him from performing that work, and he would be considered totally and permanently disabled under the Workmen's Compensation Act although he is able to do some slight manual labor. At the time of the trial, April, 1946, he had reached the age of 53 years. At that time Dr. Polito testified that he had a 60% disability, and at that time plaintiff testified that since the accident he had been unable to earn any money, except about $100 for odd jobs. It is also clearly shown by the evidence that the injuries sustained by the plaintiff were very painful, and that the resulting pneumonia also caused him considerable suffering. An Award of $2,500 for physical pains and sufferings, etc., will do substantial justice in this case.
For the reasons set forth, the judgment below is reversed and set aside and judgment is herein granted in favor of plaintiff and against defendant in the total sum of $2,936 ($2,500 being for pain and suffering and injuries sustained, and $436 for medical expenses), with interest thereon at the rate of five per cent. per annum from judical demand until paid, and for all costs in both courts.